GILKEY *et al. v.* THE BETA, Etc.

*(District Court, S. D. New York.   October 31, 1890.)*

1. COLLISION—DAMAGES—RATING FOR INSURANCE—ALLOTMENT NOTES.
    Although the expense of the new rating of a vessel repaired after collision, as an expense necessary to put the vessel into her previous insurable condition, may be recovered under the rule of *restitutio in integrum,* it is rightly excluded when the vessel is repaired in a different manner from her original construction; nor are allotment notes recoverable as advances to the crew when freight and demurrage are allowed for.

2. SAME—SUBSEQUENT CAPSIZING—PROXIMATE CAUSE.
    After collision at sea the schooner B. H., filling but not sinking, was during one day towed in from sea to Fortress Monroe, and there left in charge of her captain, who afterwards employed a tug to tow her to Norfolk, a trip of an hour or two only, during which she capsized, no cause of capsizing being made known, and the master testifying that he could not explain it. *Held* that, considering the much longer previous towage at sea under more difficult circumstances, the subsequent capsizing of the schooner, without any change in her condition, and without explanation, was to be inferred *prima facie* to be due to mismanagement, and not to the collision, as the proximate cause, and that the additional damage and expense caused by such capsizing could not be allowed in the assessment of the collision damages.

Exceptions to the Commissioner's Report.
*Owen, Gray & Sturgis,* for libelants.
*Wing, Shoudy & Putnam,* for claimant.

BROWN, J.   1. When, in consequence of collision and repair, a new rating and certificate have to be procured in place of the former rating and certificate in order to obtain insurance on the vessel, considering that marine insurance is not merely universal, but practically necessary for the support of maritime commerce, I think the expense of such a new rating, which is an expense necessary to put the vessel into her previ-

ously insurable condition, comes within the rule of *restitutio in integrum*, and should therefore be allowed as part of the damages. *The Belgenland*, 36 Fed. Rep. 504, 507. The rating is an incident attached to the vessel, and valuable to the owner. I see no reason why his pecuniary loss in this respect, when consequent on the collision, should not ordinarily stand on the same footing as any other direct pecuniary loss therefrom. It was disallowed by the referee in this case, as his report shows, because the vessel had been repaired in a different manner from her original construction, and was therefore "in some respects new." For rerating, as respects her new and different construction, the claimants could not be charged, and as the item was not divisible, it was here properly excluded.

2. The advance on allotment notes to the crew was rightly excluded, because the allowances for freight and demurrage covered such charges in another form.

3. The numerous items in regard to the damage to the vessel, cargo, and effects, and the charges and expense attending the raising and repair, as well as the value of the vessel herself, have been carefully considered by the commissioner, and to most of them I do not find in the evidence sufficient warrant for any material change in his findings, except as connected with the upsetting of the vessel, and the liberal allowances for personal effects.

4. Considerable damage, as the commissioner states, was no doubt caused by the capsizing of the schooner while being towed from Fortress Monroe to Norfolk. The collision happened at sea, off Cape Hatteras, two or three days previous. On the day after the collision she was towed in from sea to Fortress Monroe by the Beta, where she was left in charge of her master. On the following day a tug was employed by him to tow her to Norfolk, a trip of an hour or two only, and on the way she capsized. The captain was asked to explain why she capsized and answered that he could not do so. No further evidence was given on the subject. The schooner, through damage by the collision, (*The Beta*, 40 Fed. Rep. 899,) at once partly filled with water, but, as her cargo consisted of empty hogsheads and tierces, she did not sink, and was towed in that condition to Fortress Monroe. She had floated for two days, and had been towed this long distance at sea, and yet, on the short trip from Fortress Monroe to Norfolk, without any change in her condition suggested, and under far less difficulties of towing, capsized. The claimants were not present or represented. They have no means of ascertaining the cause of capsizing, and the libelant's captain says he cannot give any explanation, which is equivalent to saying that he knew of no change in her condition, and no reason why she should be upset. The fair inference, as it seems to me, under such circumstances, in the absence of explanation, is that she upset through the lack of proper management in towing, and, if so, the damage caused by upsetting is not a proximate result of the collision, but chargeable to the subsequent fault. It is doubtless extremely unsatisfactory to adjust such an item of damage upon evidence and presumption of such a kind, and in the absence of fuller, appropriate testi-

mony; but the general burden of proof is upon the libelant to establish not only damage, but that the damage claimed arose proximately from the collision; and this must be shown either by proof or by reasonable presumption from the circumstances.    In ordinary cases, doubtless, the sinking of a vessel while on her way from the place of collision to the place of repair will be presumed to be the result of the collision itself, where no subsequent want of care affirmatively appears.    But this presumption is a presumption of fact, which may or may not be reasonably drawn from all the circumstances of the case.    *The Reba*, 22 Fed. Rep. 546.    In the present instance such an inference, as I have said, does not seem to me to be justified.    It is not a case of sinking, such as might naturally have happened if the vessel got water-logged.    Nor was it a capsizing arising in the course of sinking.    Had that been the case, the captain could easily have explained it.    The captain was in the situation of an expert on the spot, and acquainted with all the circumstances of the collision, and its effects on the vessel up to the time she capsized.    His inability to explain it excludes every supposable cause arising from the collision, and leaves only that of mismanagement remaining.    The damage arising from capsizing cannot be separated from the previous damage with exactness; but sufficiently, perhaps, for substantial justice.    The gross sum allowed for raising and towing, $1,386.37, is not all owing to the upsetting.    Had she not capsized, she must have been pumped out, and the water damage to the cargo and effects would have been about the same; but there is additional damage from mud, and damage to sails, and other articles, from the upsetting alone.    Upon examining the evidence, I find there should be deducted $2,200, for this cause, on account of the schooner and her furniture and sails, $250 on account of cargo, $250 on account of the captain's personal effects, and $153.19 for one-fourth of the amounts allowed to the crew, respectively.

5. *Demurrage.* No reasonable objection can be made to the rate of demurrage allowed by the commissioner.    The time allowed is liberal in any event, and disallowing the damages from upsetting the time must be reduced by at least 21 days, amounting to $672.    With the foregoing deductions the damages will aggregate the sum of $14,701.48, for which sum, with interest from March 26, 1889, amounting in all to $16,-110.36, a decree may be entered, with costs.